Sutliff, J.
It appears in proof that Hope Tucker, deceased, and Clark Tucker — under whom complainants claim — were brothers. They formerly resided in Connecticut, but removed into this state at an early day. Hope was somewhat involved in debt, and both for the purpose of paying those debts, which he thought ■ought to be paid, and to prevent a sacrifice of his property by a forced sale, and perhaps to avoid some debts he did not intend to pay, he conveyed his property in Connecticut to his said brother •Clark. This was done with the understanding that Clark should dispose of the same, and pay the just debts, and the balance he was to bring to said Hope in Ohio. Clark, in pursuance'of this .arrangement, sold the property thus conveyed to him, and paid off certain debts of Hope, leaving perhaps a thousand dollars worth of property and money in his hands, which in reality belonged to Hope. This he brought to Ohio, where Hope had previously come. But he refused to account for it to Hope. He often acknowledged he had got the money, but always said Hope’s wife and children should have the benefit of it, and not Hope. This led to controversies and quarrels between them, and Hope often threatened to commence suit to recover the money. Clark died in 1821, leaving his last will and testament, by which he made, among others, the bequest mentioned.
Julius House, .the executor of Clark Tucker, testifies that he purchased the land, at the request of Hope Tucker, at the price *381 of five hundred dollars, sometime in 1823, of Asa Wickman, who held Elizur Lockwood’s contract for the land, and that the deed was to be made by Lockwood; that at the request of Wickman, he (House) paid to John Beatty the price of the land, and instructed Beatty, who was a justice of the peace, to write the *deed, for Lockwood to execute, according to the will of Clark Tucker, in respect of the legacy to Lucy and her children; and he afterward heard that the deed had been made out and given to them, but never saw the deed until after the commencement of this suit.
A copy of the deed executed by Lockwood is produced, and is of the tenor following:
“ In consideration of one hundred dollars received of Lucy Tucker, I do, by these presents, for myself and my heirs, justly and absolutely remise, release, and forever quitclaim unto the. said Lucy Tucker, and to her heirs, that are now living (they being the children of said Hope Tucker, her husband), and assigns forever.
“ To have and to hold the above-described premises unto her, the said Lucy Tucker, and unto her said heirs and assigns, to the only use and behoof of the said Lucy and her said heirs and assigns forever.”
This deed was duly executed as a quitclaim deed. As a reason for his agreeing to accept from Lockwood a mere quitclaim deed, House testifies that Beatty assured him that he knew the title of Lockwood to be perfect; and that such a deed would convey good title.
About the time of the purchase of the land from Wickman, Hope Tucker took possession; and he and his family continued to live upon it thereafter, making it their home, and improving the lands, which have now come to be worth four or five thousand dollars.
Orange Tucker., the youngest child of Lucy, arrived at the age of twenty-one in June, 1840. At- that time it seems his father, Hope Tucker, was quite infirm, and desired him to remain at home, and work and carry on the farming business, and support his parents, with the understanding mutually agreed upon, that at their decease the farm should, by will, be left to him, upon such terms as to remunerate him for such services. The proposition was acceded to by Orange, and seems to have been a satisfactory family arrangement. At least the proof shows no dissatisfaction ex *382 pressed by any member of the family *at that time; nor by any except the complainants at the present time. ■
At the time of the arrangement so made with Orange, in 1839, Hope Tucker held the fee of the land, under the following circumstances :
On the 3d day of March, 1831, Asa Nowlen, Chauncey Nowlen, and others, filed their petition for partition in the court of common pleas of Huron county, within which county these lands then lay, representing themselves to be seized in fee simple of about four-tenths of twenty-six hundred and seventy-three acres of land in the county, including the lands in question, as tenants in common with others unknown to said petitioners. Notice was duly given by publication, according to the provisions of the statute, and such proceedings had in the case that at the February term of said court, 1832, the court found upon proof made on the hearing of said cause, that the matters stated in the petition were true, and that said petitioners were entitled to partition as prayed for. Thereupon said Beatty and Lockwood and others, on motion, and representing themselves as interested, as tenants in common in certain of the lands sought to be partitioned, were ordered to be made parties to said petition for partition. And at the October term, 1832, said Hope Tucker, coming into court and representing himself interested, and a tenant with the petitioners in certain of the lands so •sought to be partitioned, and such proceedings having been had as to entitle him to elect, elected to take said one hundred acres of #land at its appraised value. As appears from the record, the petitioners thereupon admitted to the court the said title of said Hope Tucker, and of the other electors respectively; and John Beatty as the vendor of the land claimed by Hope Tucker, and certain others, having paid to the petitioners and claimants their proportion of the appraised value of said lands to their full satisfaction, said lands were then and there adjudged by the court to the said Hope Tucker, and to the other electors, respectively; the same to be conveyed by deeds to be made them by the sheriff according to their respective claims and election; and it was ^ordered by the court that they respectively pay their just proportion of the costs to be taxed.
The one hundred acres were appraised at four dollars per acre exclusive of improvements; and at twenty-two hundred and eighty dollars with the improvements. Under the election, Tucker had *383 to pay for the whole hundred-acre tract only four hundred dollars, and of that sum only about four-tenths was due to said Nowlen and his co-petitioners. There is no satisfactory proof that any part of this money, except the costs due from Hope Tucker on the judgment upon his election, was ever paid by him. The weight of proof is that John Beatty, as a former vendor of the land, paid the four-tenths, or as some witnesses say, four-fourteenths of four hundred dollars to which said Nowlen and his co-petitioners were entitled under the decree of the court. And neither the proof nor the circumstances of the case incline us to the belief that any other sum was ever paid by Hope Tucker. It is true the sheriff seems to have executed to him a deed of the one hundred acres under his election and the order of the court. But we do not regard this fact as evidence of the payment of the six-tenths or ten-fourteenths of the four hundred dollars belonging to the owners of the remaining interest in the one hundred acres of land so conveyed to Hope Tucker by the sheriff’s deed.
From all that appears in this case, we therefore find this state of facts:
Hope Tucker, previous to 1820, had put his property — a thousand dollars or upward — in the hands of his brother, Clark, most probably to prevent the same from going into the hands of his creditors, in the State of Connecticut. The two brothers came to Ohio immediately after the transaction. Hope then applied to Clark for the proceeds of the property. Clark refused to pay over, but promised that he would, by will or otherwise, pass the property to the wife and children of Hope. Whether prompted only by self-interest, or a possession of more persistency than evinced by Hope, to keep the property protected from the creditors, is immaterial; but Clark, though often importuned by his brother for the money, would never pay it to him; but left so *much of the property as he had not expended, to the wife and children of Hope, by his last will, at his decease in 1821. At Hope Tucker’s request the executor paid for the land in question with this bequest, which both Hope and his family seem to have regarded as his money justly due from Clark’s estate, rather than as a legacy. The form of the deed from Lockwood, however, as well as the terms of the will, conveyed tho title of the lands to Lucy Tucker, the wife of Hope Tucker, and to their children. And so the title would have remained but for tho judicial proceedings under the petition for partition. Under that *384 proceeding, commenced in 1831, by Asa Nowlen and others, the-court having jurisdiction of both the persons in interest and the land, the subject-matter of that suit, adjudged the land to Hope-Tucker, under their order of sale and his election duly made. Under this judgment, it is true, no deed was due from the sheriff until payment of the money ; but it apjiears the money was paid either by or for Hope Tucker to the satisfaction of the sheriff, who-, thereupon, on the 4th of May, 1833, as admitted by complainants’ counsel, executed his deed of conveyance of said hundred acres, conveying to him the land in fee simple. While so possessed of the title, Hope Tucker, nearly twenty years ago, having become infirm and unable to labor for his support and that of his wife, Lucy, entered into an agreement with his son, Orange, in consideration that Orange would stay upon the farm, and by his services and industry improve and conduct the same, and thereby support his parents during life, to leave him the farm. This agreement, after having been faithfully performed on the part of Orange toward his parents during his father’s life, was also faithfully performed by the father, Hope Tucker, who died in March, 1852, leaving a last will and testament, by which he devised the lands, subject to the support of his wife, and perhaps certain other bequests, to his son, Orange Tucker.
Under this state of facts, as shown by the bill and proof, the complainants pray for partition of said one hundred acres of land, and the two-twelfths thereof be set apart to them to be held in severalty, one-twelfth to each.
*Can this be done under any known rules of law or equity,, applicable to such a state of facts ?
In the first place, it appears from the bill and proof, that the fee of the land is held by Orange Tucker. The complainants do not show themselves, or any of the parties, to “joint tenants, tenants in common, or coparceners of any estáte in the lands ” of which partition is asked; and therefore partition can not be ordered until an estate shall be first acquired by the complainants in the land to be partitioned.
But the bill and proof do not show such an equity in the complainants, in regard to the lands, in the lifetime of their father, Hope Tucker, after he had acquired the legal title'to the land, as át any time to have called upon a court of equity to decree any estate in the lands to complainants. To say nothing of the fact in proof, that Clark Tucker left no property at his decease, except the prop *385 erty put into his hands by Hope Tucker, and which he had during-his life constantly refused to restore to Hope, but promising to leave-it to his family; and, finally, by his will, actually ordering it to be-paid over to the wife and children of Hope, instead of paying it to-Hope, to whom it belonged — it appears that, under a judicial proceeding and judgment, and the deed of the sheriff, executed May 4,. 1833, Hope Tucker acquired a perfect legal title to the lands.
The complainants do not aver, nor is there any proof to show,, that in so acquiring the legal title, Hope Tucker acted, or assumed, to act, or even was understood to have so acquired the title to said lands, on behalf of the complainants, or in the capacity of an agent or trustee for any other parties in interest. It is not even averred that the money paid by John Beatty to the sheriff, as that part of the four hundred dollars which was to be paid to Nowlen and; others by Hope, under his election, was paid at request, or on account of the grantees of Lockwood, or upon his (Beatty’s) covenants in his deed of conveyance, under which said one hundred acres was-then held.
The amount of money due to-Nowlen and others, so claiming the four-tenths of land to be paid them, was, as stated in the bill, one hundred and fifty dollars and sixty-two cents. And*the balanee of the four hundred dollars, beside that amount so paid byBeatty, the complainants aver was not paid by said Hope Tucker. There is an averment, indeed, in the bill that Hope Tucker “ nevería fact paid to Asa Nowlen and his co-petitioners, nor to said Lockwood or Beatty, nor to any other person or persons, anything for-said land, or any part thereof.” But it is not stated in the bill that, the sheriff was not fully paid the amount of the four hundred dollars due under the order of court, as the-purchase money, prior to-the sheriff delivering him the deed of conveyance of said land. Nor is it averred in the bill by complainants, that if Nowlen and-his co-petitions have not been fully paid their just portion of said, four hundred dollars, that the sheriff is not ready and willing still, to pay the same, or that, if the same was not in fact paid to the sheriff, they are not able to obtain the money from the administrators of said Hope, or from the estate of said Lockwood or Beatty. The petition, in short, docs not state a case, nor is there one made-by the proof, either of trust or insolvency, for attempting to charge-the lands, even if Hope Tucker had died intestate, seized of the title.
And if the facts stated and proved are insufficient to make a case; *386 for relief as against Hope Tucker, if still living, much, less do they constitute a case for relief against Orange Tucker, who is now seized of the lands, under an arrangement honestly entered into, and, with fidelity, and nearly twenty year’s service on his part, executed; and that, as admitted by the bill, without any knowledge or notice of the rights of complainants in the premises. Under these circumstances, having executed the contract on his part, by staying upon the farm and conducting it, and affording a support to his parents, the agreed consideration for which Hope Tucker promised to convey him the title to the land, although that conveyance has been made by will instead of deed, in equity Orange should be regarded as a purchaser without notice, and for a valuable consideration. Having then not only and equal equitable claim to the lands, but also the legal estate, Orange’s claim to the lands can not be superseded by that of complainants.
It is true, the complainants aver that they were not made parties *in the judicial proceedings under which the lands were adjudged and conveyed to Hope Tucker, in 1833. The record, how■ever, shows the contrary. A notice was published in a newspaper ■of general circulation in the county, as provided in the third section of the “act to provide for the partition of real estate,” in force March 3, 1831. This was a good notice, and all persons in interest so notified, thereby became parties, and bound by the subsequent proceedings in the cause. Hence it becomes unnecessary to •determine what estate was in fact conveyed by the deed of Lockwood ; for, whether the words heirs and children, in that deed, be ■regarded as words of purchase or limitation, the operation of the judgment and sheriff’s deed of 1833, and the proceedings in parti-tion, would, in either case, pass the legal title to Hope Tucker.
And in regard to the equitable title of the complainants to the land, we can not perceive how, even as against Hope Tucker, in his lifetime, such an equity is shown from the averment that Hope did not pay the appraised value of the land.
In the first place, the record in the partition proceedings shows that Hope claimed to be the proprietor of all the remaining interest, beyond what was held by Nowlen and his co-petitioners, and for which they were paid. If this were so, and we think the court .and sheriff so considered it, Hope was not bound to make any further payment to the sheriff than what was paid in satisfaction of the adverse claimants.
*387 Again, if the complainants were permitted to overthrow the legal title of Hope Tucker so acquired, by showing in themselves a perfect equitable title, have they in fact shown such superior equitable title? The evidence is satisfactory to show that the five hundred dollars paid for the lands by the executor of Clark Tucker was paid at the instance of Hope; that the money was in fact the proceeds of his own property, of which Clark had lived in possession, and by will had attempted to restore to the family of Hope, instead of restoring it to him in accordance with Hope’s frequent request.
Hope directed the money to be paid for the purchase of the farm, and did not direct, nor is there any proof that he knew, *the form of the deed, down to the time of the partition proceedings, or during his life. He had, ever since the purchase cf the land, lived upon it, and continued to regard it as his own; and had, at that time, according to its appraised value, put improvements upon the land worth more than $1,800, and of nearly five times the value of the land.
Under such circumstances — having under judicial proceedings acquired the legal title to the lands, so strongly fortified by 'equity —we can not perceive from the proof in this case such an equity on the part of the complainants as would have been sufficient to supersede the legal title, while held by Hope Tucker. Much less, as already remarked, do the complainants show any equitable title sufficient to supersede the legal and equitable title of Orange Tucker to the lands in question.

The bill must therefore stand dismissed with costs.

Bartley, C. J., and Swan, and Scott, JJ., concurred.